## Fulmer's Appeal.

## Fulmer *versus* Uhler et al., Executors.

H. and W. entered into a partnership for the purpose of building a furnace and manufacturing pig iron. It was stipulated that the money necessary to build the furnace and carry on the business, should be advanced by said parties, in equal proportions, in instalments, whenever it should be required. It was fu:ther provided, that the parties should "be entitled to the clear net gains and profits arising from the said trade or business of the said co-partnership, in the several proportions which their several interests bear to the total amount then paid in." The partnership was dissolved by its own limitation. F. filed a bill for a partnership account, and claimed the profits should be divided between the parties, in the proportions of their respective contributions to the expense of building the furnace and working the same, while W. contended that the profits should be equally divided between them. It appeared that F. had contributed an amount a few thousand dollars in excess of W.; that F. assumed exclusive control of the business and denied all access to the books by W.; that the latter demanded to see the books and the vouchers of F., in order to equalize his contribution, and was denied; that he tendered an amount sufficient to make their contributions equal and was refused: that owing to the uncertainty of the amount of capital required no stated amount had been arranged for as the instalments to be paid, and that no time was fixed when the payment of the instalments was to cease; that at the time the furnace commenced operations the difference in the contributions was small, and that the disproportion arose thereafter; that by reason of the profits arising from the business, all necessity for contribution had ceased long prior to the time fixed as the limitation of the partnership. *Held* (affirming the court below), that the provision in the articles of partnership was intended to provide for the wilful default of a partner, in not making his full contribution of capital; that there was no such wilful default in this case, and that if the contributions were equalized before the profits were accurately ascertained, that was time enough and saved any default.

April 3d 1879. Before Sharswood, C. J., Mercur, Gordon, Paxson, Woodward, Trunkey and Sterrett, JJ.

Appeal from the Court of Common Pleas of *Northampton county:* sitting in equity: Of January Term 1879, No. 175.

Henry Fulmer was the appellant and plaintiff below. Peter Uhler was defendant and his executors were appellees.

The pleadings were a bill to settle a partnership account, which partnership the answer admitted existed and had been dissolved. Nothing material to the controversy arose out of the pleadings.

These parties and a third person, whose interest they bought out, agreed to go into partnership to build a furnace and make pig iron. They agreed upon the mode of dividing the profits and the losses. The contract was in writing and there was no pretence on either side that it did not contain the contract between them.

The plaintiff contended that the profits were divisible in proportion to the contributions to capital. The defendant contended that

the profits were divisible in the proportion of their interests in the capital whether contributed or not.

The contract, after covenanting to form the partnership and contribute equally to the requisite expense of building and working, stipulated: "And the parties shall be entitled * * * to the profits * * * in the several proportions which their several interests bear to the total amount then paid in." The plaintiff contended that this meant in the proportions of the amounts they shall have actually contributed at the times the profits were earned. The master, to whom the cause was referred, directed the account to be taken, dividing the profits in the proportions of the contributions to the building and working. The court, however, held that if the contributions were equalized before the profits were accurately ascertained and known, that was time enough and saved the default.

The decree was made by His Honor Judge Dreher, of the Forty-third Judicial District, holding the Court of Common Pleas in the Third District.

*Edward J. Fox* and *R. C. McMurtrie*, for appellant.

*H. Green* and *B. F. Fackenthall*, for appellees.

Mr. Justice PAXSON delivered the opinion of the court, May 7th 1879.

This case presents but a single question. On the one hand, the appellant claims that the profits should be divided between the partners in the proportions of their respective contributions to the expense of building the furnace and working the same; while on the other hand, the appellees contend that the profits should be divided equally between them, as decreed by the court below.

The first step in this investigation is to ascertain what the parties agreed to do. On the 30th of October 1869, Henry Fulmer, appellant, Peter Uhler, now deceased, and whose executors are the appellees, and John D. Wagener, entered into a partnership for the purpose of building an anthracite hot-blast furnace, and manfacturing pig iron at Glendon, near Easton, Pennsylvania. On July 2d 1870, Mr. Wagener sold out to the two others, and transferred all his right, title and interest to them for the sum of $1425, which was paid by Fulmer. The business was then continued by Fulmer and Uhler until November 1st 1872, at which time the partnership was dissolved by its own limitation.

By the agreement of partnership it was stipulated that the money necessary to build the said furnace, and to carry on the said business, should be advanced by said parties in equal proportions, in instalments, whenever it should be required; in other words, each partner was to advance one-third of the necessary capital. This, without more, would have made them equal partners, and each would be clearly entitled to one-third of the profits as the partnership

originally stood.   After the withdrawal of Mr. Wagener, the proportion of the two remaining partners would be one-half each.   But the agreement referred to contained this further provision, that "The aforementioned parties shall be entitled to the clear net gains and profits arising from the said trade or business of the said co-partnership in the several proportions which their several interests bear to the total amount then paid in."   The proper construction of this last clause is the principal contention here.   It is not altogether free from obscurity, yet we think its meaning is sufficiently apparent. To hold that it contemplated an equal division of the profits, without regard to the amount of capital paid in, would be to treat it as surplusage and expunge it from the agreement.   It was not needed to produce equality; that, necessarily, resulted from what had already been said in the articles.   We think the manifest object of the clause referred to was to qualify the prior language of the agreement, and to make the interest and share of each partner depend upon his contribution to the capital of the concern.   This view is the more reasonable when we look at the position of the parties at the time they embarked in this enterprise.   The amount of capital to be paid in was not fixed, and probably was not known to them at the commencement with any degree of certainty.   That it would require a very large sum must have been clear to each.   No one of them could know with certainty that his partners would be able from time to time to furnish their respective shares.   It was doubtless intended that in case a partner made default and failed to furnish his share of the capital, that his interest should be correspondingly diminished.   This is the more probable from the absence of any provision in the agreement for charging a defaulting partner with interest on any advances made by the other partners to cover his default.

At the time the partnership was dissolved, it was conceded Fulmer, the appellant, had advanced considerably more than Mr. Uhler, and he claimed a corresponding increase in his share of the profits. This claim was resisted by the appellees, who contended that the alleged excess of Mr. Fulmer's advances were the result of bad faith to Uhler; that the latter had always been ready and willing to contribute his share, and that he had been purposely kept in ignorance by Fulmer of the extent of the payments made by the latter.

The business appears to have been conducted in a manner altogether peculiar.   Mr. Fulmer kept the books of the concern, and the court below finds that "he had all the books and papers, kept them under his special care and supervision, under lock and key, and carried the key in his pocket."   The learned judge further states that "the plaintiff (Fulmer) seems to have looked upon the defendant as a subordinate, who had no, or very little, voice in the management of the business; and that when he desired information or opportunity for inspection of the books, he must wait the entire

9 Norris—10

pleasure and convenience of the plaintiff." There was no book kept in which the contributions of the respective parties were entered. Instead of each partner paying into the firm regular instalments at stated periods, and claiming and receiving a proper credit therefor on the books, they appear to have divided the bills and expenses between them in an informal way, each paying such as suited him, and keeping his own account. The result was that at no time were they precisely equal. On the 5th day of August 1871, the day the furnace went into blast, and the manufacture of iron commenced, Fulmer had advanced $1408.39 more than Uhler, being $704.19½ more than his share of the aggregate advancements made to that date. It will be noted, however, that the amount paid for Wagener's interest, $1425, is included in the advances of Mr. Fulmer, and if stricken out would leave him a few dollars in arrear. It is at least doubtful how far money voluntarily advanced by Fulmer to Uhler for the purchase of Wagener's interest can be regarded as a contribution of money to build the furnace and carry on the business of manufacturing iron, within the meaning of the articles of partnership. Be that as it may, the difference in their contributions, at the time the manufacture of iron commenced, was very small. It was between that time (August 5th) and the 16th of November that Fulmer advanced the most of his excess of his contributions. It appears that during this period the firm had considerable iron on hand, which Uhler desired sold for the purpose of paying off the debts. He insisted upon not paying any more money until the iron on hand had been sold. Fulmer refused to sell, and advanced the money required. The court below says upon this point: "The plaintiff objected to have the iron shipped, and actually stopped the loading, declaring that iron should not be shipped until he said so; that he was boss; that he had paid pretty near all in that had been paid, and could pay Uhler all he had in in five minutes." There was no time fixed when the payment of the instalments or contributions should cease. The reasonable construction of the agreement is, that they should not be required after the business commenced to be self-supporting. It appears to have been so from the time the furnace went into blast. It was the right of Uhler to have the iron sold to defray the expenses. He was entitled to as much voice in the business as Fulmer. The latter had no right to hold the iron against the wishes of his copartner, and by advancing his own money for expenses which the firm had the means to pay, deprive his weaker partner of a portion of his interest in the business.

The iron, as before stated, was not sold, and both parties continued to make contributions, Fulmer making his last payment on August 23d 1872, and Uhler his last payment on August 1st 1872. After these payments, Fulmer's contributions amounted to $58,761.43; Uhler's to $49,045.63. Looking at these transactions

by the light of past events, it seems very clear that long prior to August 1872, the necessity for advancements or contributions had ceased. The business was extremely profitable, with a quick demand for iron at high prices. The appellant, by paying the amount of Thayer, Erdman, Wilson & Co., August 5th 1872, of $699.30, and claiming credit for it as a contribution or advancement, under the agreement of partnership, admits that down to that time at least either party had the right to make contributions. On the 27th of September following, but a little over a month after Fulmer's last contribution, Uhler made a demand upon him for a statement of the moneys paid by him on account of the firm, and offered to pay whatever sum was necessary to equalize their contributions. To this demand in writing Uhler received no answer, and on the 5th of October he actually tendered Mr. Fulmer the sum of $6000, which was fully sufficient to equalize the advances. This sum Fulmer declined to receive, contending that their respective rights had become fixed prior to that time, and that the offer came too late. It is unnecessary for us to decide how this might have been, had the contributions been regularly made by instalments, the books been properly kept, and each partner in possession of full information as to what the other had paid. They were not dealing upon equal terms. It is apparent that Fulmer had superior means of information as to the condition of their accounts. The evidence shows a dispute between them in regard to their payments, early in 1872, resulting in a quarrel. Uhler produced his account to Fulmer, and demanded to see his. Fulmer's account was finally produced, the court below says in April 1872, and after the quarrel, but the vouchers to sustain it were not produced or exhibited to Uhler, although he demanded them. He certainly was entitled to see them. He had a right to know how much his partner had contributed, and to see the vouchers therefor, before he could be considered in default for not paying up the difference. The parties must be held to entire good faith.

Mr. Fulmer having had the sole charge of the books, and having been the active business man of the concern, and fully posted as to its affairs, it was his duty to give his partner all the information in his possession. Indeed, I do not see how, in view of the manner in which the business has been transacted, either party could be held to be in default until an account was furnished by the other partner showing his payments. It is evident that each one intended to contribute his share. There was some evidence of Uhler's having been pressed for money, and of his refusal to make further payments, but the fact is that their contributions were substantially equal when the furnance went into blast. After that the concern made money rapidly.

The provision in the articles of partnership was intended to provide for the wilful default of a partner in not making his full con-

[Fulmer's Appeal.]

tribution of capital. We see no such wilful default in this case. It is, at least, questionable whether Mr. Fulmer had any right to charge his payments made since August 5th 1871, as contributions under the agreement for the purpose of fixing the interest of the respective parties in the profits, and if he had, Uhler would not under the circumstances be in default until notice of such payments had been given him and a demand for contribution. If Fulmer had a right to increase his contribution on the 5th of August 1872, there is no good reason why Uhler should not have the right to make his account good in September or October. There was no necessity for contribution at either date, nor had there been for months before.

I do not regard the matter of the division of the $60 for rents as important. It was a very small matter in a very large transaction. Nor do I attach much significance to the income returns made by the parties. As minor points of evidence they are entitled to some weight, but are not controlling.

The decree is affirmed and the appeal dismissed at the costs of the appellant.